**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| MARY E. WINFREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:19-CV-471-HAB |
| | ) | |
| LAGRANGE COUNTY SHERIFF, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On August 16, 2019, Plaintiff was terminated from her position as a dispatcher with the

LaGrange County Sheriff's Department. Plaintiff asserts that she was fired because she supported

the elected sheriff's political opponent in the 2018 primary. Defendant claims that she was fired

due to her negative interactions with her coworkers. Now before the Court is Defendant's Motion

for Summary Judgment and Designation of Evidence (ECF No. 13)[1], and its supporting

Memorandum (ECF No. 14). Plaintiff filed her Response to the motion (ECF No. 27), along with

her supporting Brief (ECF No. 28). Defendant has filed its Reply (ECF No. 33). The matter is now

ripe for determination.

**A.      Factual Background**

Plaintiff began her job as a dispatcher in 2009. The parties agree that her position was not

a management or decision-making position. Indeed, Plaintiff concedes that during her employment

she was an employee at-will.

---

[1] Defendant has also filed a Motion to Strike (ECF No. 31) asking the Court to strike portions of Plaintiff's response and the affidavit Plaintiff submitted in opposition to summary judgment. This motion has also been fully briefed. (ECF Nos. 34, 35). Because the Court can distinguish which exhibits, affidavits, and statements may properly be considered when deciding whether summary judgment is appropriate, the Court denies Defendant's Motion to Strike. The Court has noted Defendant's objections and will consider the objections to the extent they arise in the Court's summary judgment analysis.

In both 2014 and 2018, the current LaGrange County Sheriff, Jeff Campos, was opposed in the primary election by Richard Snyder. While the parties dispute whether Plaintiff supported Snyder in the 2014 election (owing to Plaintiff's inconsistent testimony on the subject), there is agreement that she supported Snyder in the 2018 election. Her efforts lasted approximately four months, and included door-to-door canvasing, attending campaign meetings, and posting pro-Snyder messages on Facebook. While Plaintiff remained neutral at work, and never discussed the election with Campos, it is nonetheless undisputed that Campos was aware of Plaintiff's campaign activities.[2]

Plaintiff's personnel file is a decidedly mixed bag. As Plaintiff notes, her Performance Appraisals and Evaluations are largely positive. In one such evaluation from April 2018, Plaintiff was described as "very dependable," "polite and . . . always willing to help," and a "great asset to our dispatch center" who has "the potential to be a leader." (ECF No. 27-6 at 22–29). An evaluation from November 2018 states that Plaintiff did "a great job," was a "reliable team member," that she had recently been "a great team member that people like being around," and further described Plaintiff as a "good decision maker." (*Id*. at 49–53).

On the other hand, there is no lack of reprimands in Plaintiff's file. In March 2018, Plaintiff received a one-day unpaid suspension for causing a "poor work environment." (*Id*. at 20–21). Plaintiff received a verbal reprimand in February 2018 for "laughter on the radio, horse-playing, and lack of respect towards other employees." (*Id*. at 32). A two-day suspension was handed to Plaintiff in April 2012 for failing to dispatch officers to a domestic violence call. (*Id*. at 35–38). In

---

[2] Defendant devotes a significant portion of its initial brief to its argument that "there is no evidence that Defendant was even aware of Plaintiff's support for Mr. Snyder in the 2018 Primary Election." (*See* ECF No. 14 at 11–12). Defendant makes this argument despite Campos' sworn testimony that he was told, by his wife, of Plaintiff's support for Snyder prior to the 2018 election. (ECF No. 27-2 at 18–19). True, Campos' deposition was conducted after Defendant's brief was filed, but the Court is confident that Defendant's counsel, competent attorneys each, discussed this issue with him prior to filing for summary judgment. The Court further notes that, even in its reply, Defendant relegates Campos' testimony to a footnote. (ECF No. 33 at 4, n.2).

February 2012, it appears that Plaintiff provided minors with tobacco products. (*Id*. at 39–40). Finally, there are several written complaints regarding Plaintiff's conduct toward other members of the dispatch center. (*Id*. at 41–45).

According to Defendant, the final straw came in August 2019 when Plaintiff's supervisor was told that Plaintiff "had been upsetting a lot of dispatchers and officers by gossiping and trying to create chaos within the department." (ECF No. 14 at 7). In addition, Campos was told by one of his officers that Plaintiff was "causing drama within the Sheriff's Department." (*Id*.). Plaintiff was terminated on August 16, 2019, during a meeting with Campos, his Chief Deputy, and Plaintiff's supervisor. Plaintiff was initially told that the reason for her termination was that she was "toxic." When asked again by Plaintiff why she was being terminated, Campos told Plaintiff that "she was not loyal to the department." (*Id*. at 8).

**B.     Legal Discussion**

**1.     *Summary Judgment Standard***

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide,

3

based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**2.      *Plaintiff's First Amendment Claims***

The applicable law in First Amendment employment cases is set forth in the Seventh Circuit's decision in *McGreal v. Vill. of Orland Park*, 850 F.3d 308 (7th Cir. 2017). To recover on her claim, Plaintiff must show: (1) she engaged in activity protected by the First Amendment; (2) she suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the decision to take the retaliatory action. *Id*. at 312. The only dispute between the parties is on the third element.

At the summary judgment stage, First Amendment retaliation cases go through a burden shifting process. First, the plaintiff must produce evidence that her speech was "at least a motivating factor—or, in philosophical terms, a 'sufficient condition'—of the employer's decision to take retaliatory action against [her]." *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012) (quoting *Greene v. Doruff*, 660 F.3d 975, 979–80 (7th Cir. 2011)). If the plaintiff makes this initial

showing, the burden then "shifts to the employer to rebut the causal inference." *Id*. The employer can meet its burden by offering an alternative explanation for the firing, showing that its decision to terminate the plaintiff "would have been made in the absence of the protected speech." *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012). If the employer successfully rebuts the causal inference, the burden shifts back to the plaintiff to "demonstrate that the [employer's] proffered reason was pretextual and that the real reason was retaliatory animus." *Id*. "[P]retext 'involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action.'" *Burton v. Bd. of Regents*, 851 F.3d 690, 698 (7th Cir. 2017) (quoting *Harden v. Marion Cty. Sheriff's Dep't.*, 799 F.3d 857, 864 (7th Cir. 2015)).

As the Supreme Court clarified, a plaintiff's *prima facie* case, supplemented by evidence of pretext, often is adequate to sustain a finding of liability for unlawful retaliation. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). In the summary judgment context, this means that, to rebut the Defendant's proffered explanations for her termination, Plaintiff must produce evidence upon which a rational finder of fact could infer that these explanations were lies. *See Vukadinovich v. Bd. Sch. Trs. N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002).

Here, the Court concludes that Campos' own words are enough to doom his dispositive motion. Whether or not Campos' statement that Plaintiff was "not loyal to the department" constitutes direct evidence of retaliatory intent, it certainly raises an inference that is not hard to reach. And, while Defendant attacks Plaintiff for not having proof that this statement referred specifically to Plaintiff's support for Snyder, it is noteworthy that Defendant offers no alternative interpretation. *See, e.g., Trippy v. Sams*, 512 F.Supp. 5, 7 (E.D. Tenn. 1980) (refusing to accept plaintiff's suggested inference regarding employer's statement where "positive, unimpeached and otherwise uncontradicted testimony" defeated that inference). Indeed, the Court struggles to

imagine a construction of the phrase "loyalty to the department" that does not invoke Plaintiff's support for the sheriff's political rival. The Court has little trouble concluding that a rational factfinder could infer, from Campos' statement, that Defendant's performance-based termination excuses are lies.

The record demonstrates good reason to view Defendant's proffered termination excuse with a skeptical eye. While it is true that Plaintiff had received multiple suspensions and verbal warnings, each of those pre-dated two performance reviews that could only be described as positive. Defendant argues that Plaintiff's "negative attitude was reflected in her performance reviews;" this is true, but not in a way that supports Defendant's claims. While the evaluations do note Plaintiff's struggles to get along with co-workers, those struggles are described as problems that have been solved. *See* ECF No. 27-6 at 25 ("There have been issues on her shift that have been addressed."); *id.* at 51 ("There were a few issues earlier in the year that seem to have been corrected. Recently Mary has been a great team member that people like being around."); *id*. at 52 (noting, as an accomplishment since her last review, that Plaintiff "has improved relationships in the dispatch center."). These notations are at odds with Defendant's current stance that Plaintiff had longstanding disciplinary issues.

The Court also notes the lack of detail in the allegations that formed the alleged basis for Plaintiff's firing. In Defendant's own words, the conduct that gave rise to the termination was "gossiping" and "causing drama." (ECF No. 14 at 7). The Court finds it hard to believe that this kind of conduct, more befitting a teenage cable television drama than a federal lawsuit, could form the basis for an immediate termination after nearly a year and a half of clean behavior. Rather, it seems just as likely that Defendant seized upon these vague assertions which, incidentally, appear

to be the first allegations of misconduct by Plaintiff since the 2018 election, to finally terminate her for her perceived disloyalty.

It is certainly possible that a jury could accept Defendant's explanation and find that Plaintiff's termination had nothing to do with her campaign activities. However, the Court finds that it is equally possible that a jury could find for Plaintiff based on Campos' words alone. For these reasons, the Court finds that there exist genuine issues of material fact that must be resolved by a factfinder, necessitating the denial of Defendant's dispositive motion.

**C.     Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment and Designation of Evidence (ECF No. 13) is GRANTED with respect to Plaintiff's claim under the Indiana Constitution and DENIED in all other respects. Defendant's Motion to Strike (ECF No. 31) is DENIED.

SO ORDERED on February 18, 2021.

 s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT